867 P.2d 1150

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Russell H. SIMPSON, Defendant–Petitioner.**

No. 20585.

Supreme Court of New Mexico.

Nov. 24, 1993.

Gary C. Mitchell, P.C., Gary C. Mitchell, Ruidoso, for petitioner.

Tom Udall, Atty. Gen., Gail MacQuesten, Mary Catherine McCulloch, Asst. Attys. Gen., Santa Fe, for respondent.

Sammy J. Quintana, Chief Public Defender, Sheila Lewis, Appellate Defender, Santa Fe, for amicus curiae N.M. Public Defender.

H.R. Quintero, Silver City, for amicus curiae N.M. Criminal Defense Lawyers Ass'n.

Jones, Snead, Wertheim, Rodriguez & Wentworth, Lorenzo F. Garcia, Arturo L. Jaramillo, Santa Fe, for amicus curiae Jones Law Firm.

## OPINION

MONTGOMERY, Justice.

Russell Simpson was convicted by a jury of two counts of homicide by vehicle (vehicular homicide) and one count of great bodily injury by vehicle under NMSA 1978, Subsections 66–8–101(A) and (B) (Cum.Supp.1993).[1] He appealed to the New Mexico Court of Appeals, which assigned his case to the summary calendar and in two successive calendar notices proposed summary affirmance. Simpson responded to the first calendar notice but not the second, and the Court of Appeals affirmed the convictions in an unpublished memorandum opinion. Simpson then petitioned this Court for a writ of certiorari, asserting that the statute under which he was convicted was unconstitutional as applied in his case. He raised various other questions for review by this Court on certiorari, including the constitutionality of the summary calendar procedure utilized by the Court of Appeals, as authorized by Rule 12–210 of our Rules of Appellate Procedure, SCRA 1986, 12–210 (Repl.Pamp.1992). We granted the petition under NMSA 1978, Section 34–5–14(B) (Repl.Pamp.1990), to consider the questions of constitutionality and substantial public interest raised by Simpson's petition.

In addition to the briefs filed in this Court by the parties, extensive amicus curiae briefs, with supplements, were filed by the New Mexico Public Defender, the New Mexico Criminal Defense Lawyers Association

1. The statute in effect at the time Simpson was prosecuted was NMSA 1978, §§ 66–8–101(A) and (B) (Repl.Pamp.1987). These subsections read the same as the current versions cited in the text.

(both attacking the summary calendar system), and the law firm of Jones, Snead, Wertheim, Rodriguez & Wentworth (defending the summary calendar system). Despite the parties' and amici's able briefs, we have concluded, for the reasons given later in this opinion, that this case does not provide an appropriate occasion to address the constitutionality of the summary calendar procedure. On the merits, we hold that the vehicular homicide and great bodily injury by motor vehicle statute is not unconstitutional as applied in this case. We also reject Simpson's other claims of error by the trial court and, accordingly, affirm the convictions.

The facts in the case are relatively simple and straightforward—although they are accompanied by the tragic consequences of lost, damaged, and at least partially ruined lives that all too often attend an instance of driving while intoxicated. On December 17, 1990, Simpson was driving east in a Chevrolet station wagon on North Main Street in Las Cruces, New Mexico. His fiance, Heather Paula Silvers; his fiance's daughter, Brandi Silvers; and his fiance's friend, Susan Figueroa, were passengers in the vehicle. As Simpson entered the intersection of Main Street and Solano, Julian Sandoval, who was driving west on Main Street, was making a left turn from Main Street onto Solano. There is some dispute over whether Simpson entered the intersection of Main Street and Solano on a green or yellow light, but in any event the two vehicles collided and Simpson's car careened into the traffic signal pole. Brandi Silvers and Susan Figueroa died from the impact, and Heather Paula Silvers suffered permanent impairment of brain functions.

Simpson was charged with two counts of homicide by motor vehicle and one count of great bodily injury by motor vehicle. He stipulated that his blood alcohol content was between .07 and .13 at the time of the collision. There was other evidence from which the jury could have inferred that Simpson was under the influence of intoxicating liquor. The speed limit at the intersection of Main Street and Solano was 35 miles per hour. There was other evidence enabling the jury to find that he was speeding. Witnesses testified that when he entered the intersection, he was driving in excess of the speed limit, somewhere between 35 and 53 miles per hour.

As stated above, he was tried and convicted on the counts charged. He was sentenced to incarceration for six years followed by two years of parole, suspended to incarceration for six months and probation for five years. The convictions were affirmed by the Court of Appeals. On certiorari, Simpson raises several issues, but before we address those issues we first consider the State's contention that we should remand this case to the Court of Appeals.

### 1. Failure to respond to calendar notice does not require remand.

The State urges us to remand to the Court of Appeals because Simpson failed to respond to that Court's second calendar notice. The State asserts that Rule 12–210(D) required Simpson to respond and that we should not review the case until Simpson has complied with that purported requirement.

▮ Rule 12–210(D) prescribes the procedure to follow when a case has been assigned to the summary calendar. It provides that after a docketing statement has been filed, the appellate court is to issue a notice stating its proposed disposition and the basis therefor. Subparagraph D(3) of the rule goes on to provide:

> [A]ppellate counsel or trial counsel shall have ten (10) days from date of service of the appellate court clerk's notice of proposed disposition to file a memorandum setting forth reasons why the proposed disposition should or should not be made and why the case should or should not be assigned to the summary calendar, but the party shall be restricted to arguing only issues contained in the docketing statement. The docketing statement may be amended at this time for good cause shown with the permission of the appellate court[.]

While the rule thus gives a party ten days to file a response to a calendar notice, contrary to the State's assertion it does not require a party to file a response.

In the present case, the Court of Appeals issued two calendar notices, both proposing summary affirmance. In those notices the Court refused to consider Simpson's challenges to the uniform jury instructions given in the case, stating that such challenges "are best addressed to our supreme court." Thus, Simpson evidently saw no reason to prolong the debate with the Court of Appeals and instead elected to take his chances by filing a petition for a writ of certiorari in this Court. He was entitled to make that choice, and Rule 12–210(D)(3) did not require him to do otherwise.

### 2. Homicide by vehicle statute is constitutional as applied in this case.

Simpson's first argument on certiorari is that New Mexico's homicide by vehicle statute is unconstitutional as applied to him under the facts of this case and that the district court erred by giving jury instructions that track the requirements of the statute.

Section 66–8–101, headed "Homicide by vehicle; great bodily injury by vehicle[,]" defines "homicide by vehicle" as "the killing of a human being in the unlawful operation of a motor vehicle" and "great bodily injury by vehicle" as "the injuring of a human being, to the extent defined in Section 30–1–12 NMSA 1978,[2] in the unlawful operation of a motor vehicle." Under our Motor Vehicle Code, the unlawful operation of a motor vehicle includes driving under the influence of intoxicating liquor, proscribed by NMSA 1978, Section 66–8–102(A) (Cum.Supp.1993), and driving recklessly, penalized in NMSA 1978, Section 66–8–113(A) (Repl.Pamp.1987).

Simpson asserts that the vehicular homicide statute is unconstitutional because it impermissibly shifts the burden of proof from the State to the defendant. He argues that the shift occurs both because of Section 66–8–101 and because of the causation instruction the trial court gave to the jury. That instruction was based on SCRA 1986, 14–251

of our Uniform Jury Instructions (UJI Crim. 14–251), which provides: [3]

For you to find the defendant guilty of homicide by vehicle, the state must prove to your satisfaction beyond a reasonable doubt that the act of the defendant caused the death[s] of [Susan Figueroa and Brandi Silvers].

The cause of a death is an act which, in a natural and continuous chain of events, produces the death and without which the death would not have occurred.

There may be more than one cause of death. If the acts of two or more persons contribute to cause death, each such act is a cause of death.

Simpson argues that the statute, in combination with the causation instruction, allowed the jury to find him guilty of the charges if it found that he was either driving under the influence of intoxicating liquor or driving recklessly and that his behavior was only *one*—possibly a relatively insignificant one— of several possible causes of the deaths and great bodily injury to the victims. The jury, so the argument goes, could have convicted him even if his fault was merely one percent of the total cause of the harm. This result, he argues, shifted the burden of proof to him because to be acquitted he had to show that he was not at fault to *any* extent. Defendant asserts that "Mr. Simpson's intoxication and/or his reckless driving should be the *sole* cause of the accident and that is what should be proven beyond a reasonable doubt and therein is the key problem because that is not what happened." He suggests that other parties, including Sandoval and the City of Las Cruces, which installed and maintained the traffic signal pole struck by his car, were at least partially at fault for the accident.

■ However, contrary to defendant's assertion, the statute and jury instruction neither shifted the burden of proof to him nor allowed the jury to convict him if he was only

---

**2.** NMSA 1978, § 30–1–12 (Repl.Pamp.1984), defines "great bodily harm" as "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body[.]"

**3.** The district court also gave the jury another, substantially similar, causation instruction that covered the charge of great bodily injury by vehicle.

at fault to an immaterial extent. Rather, as the causation instruction clearly states, the State had the burden of proving beyond a reasonable doubt that the defendant's actions caused the deaths and great bodily harm, in the sense that his unlawful acts, "in a natural and continuous chain of events," produced the deaths and the great bodily harm. This refinement of the concept "caused" appearing in the instruction incorporates the notion of proximate cause and instructs the jury not to convict the defendant if he is only at fault to an insignificant extent.

■ General principles of criminal law do not require that a defendant's conduct be the *sole* cause of the crime. Instead, it is only required that the result be proximately caused by, or the "natural and probable consequence of," the accused's conduct. 1 Charles E. Torcia, *Wharton's Criminal Law* § 26, at 124–26 (14th ed. 1978). The conduct of other parties is relevant only if it is a superseding cause that negates the defendant's conduct. *See id.* at 127–32; *see also State v. Romero,* 69 N.M. 187, 191, 365 P.2d 58, 60–61 (1961) (rules concerning contributory negligence do not apply to homicide cases based on criminal negligence in operating automobile; if defendant's negligence is found to be the cause of death, he is criminally responsible whether or not decedent's failure to use due care contributed to harm).

Accordingly, we find that New Mexico's vehicular homicide statute does not unconstitutionally shift to the defendant the burden of proof and that the trial court did not err in giving jury instructions that tracked the statute.

3. *Trial court did not err in giving withdrawn instruction on blood alcohol level and refusing proposed instruction on speeding.*

Simpson argues that the trial court erred in giving its Instruction No. 6, taken from SCRA 1986, 14–242 (UJI Crim. 14–242), which was withdrawn by this Court in 1989, before this case arose. UJI Crim. 14–242 provided that, "with other evidence," test results as to defendant's blood alcohol content could be "considered for the purpose of determining whether or not the defendant

was under the influence of intoxicating liquor at the time of the incident." The instruction went on to provide that, if the jury found that the defendant's blood alcohol content was .10% or greater at the time of the incident, it could, but was not required to, find that the defendant was under the influence of intoxicating liquor. "However, [the jury could] do so only if on considering all the evidence, [it was] convinced beyond a reasonable doubt that the defendant was intoxicated at the time of the incident." *Id.*

UJI Crim. 14–242 was intended to track NMSA 1978, Section 66–8–110, which describes the evidentiary use of blood alcohol test results. Before 1984, Section 66–8–110 provided as follows: "If the blood of the person tested contains ... one-tenth of one percent or more by weight of alcohol, the arresting officer shall charge him with a violation of Section 66–8–102 NMSA 1978 *and it shall be presumed that the person was under the influence of intoxicating liquor."* Section 66–8–110(C) (Cum.Supp.1983) (emphasis added). In 1984, the legislature deleted the latter (emphasized) clause in the statute. 1984 N.M.Laws, ch. 72, § 5. This Court then, in 1989, withdrew UJI Crim. 14–242. *See* SCRA 1986, 14–242 & committee commentary (Cum.Supp.1993). Simpson argues that, inasmuch as the legislature deleted the statutory presumption, the trial court erred in giving Instruction No. 6, because that instruction established a presumption.

■ Defendant's argument fails for two reasons. First, Instruction No. 6 did not establish a presumption. As quoted above, Instruction No. 6 provided that if the jury found defendant's blood alcohol content was .10% or higher at the time of the incident, it could, but was not required to, upon considering all of the evidence, find that defendant was under the influence of intoxicating liquor. This instruction allowed the jury to *infer* intoxication, but it did not establish a presumption. *See* SCRA 1986, 14–242 committee commentary.

■ Second, if giving Instruction No. 6 was error, it was harmless error because the instruction was more beneficial to Simpson than was the law in effect at the time of the

accident. Section 66–8–102, which prescribes the penalty for driving while under the influence of intoxicating liquor or drugs, makes it "unlawful for any person who has one-tenth of one percent or more by weight of alcohol in his blood to drive any vehicle within this state." Subsection 66–8–102(C).[4] The statute thus irrebuttably presumes that a defendant is under the influence of intoxicating liquor if his or her blood alcohol content is at least .10%. *See State v. Harrison*, 115 N.M. 73, 78, 846 P.2d 1082, 1087 (Ct.App.1992) (driving while intoxicated is strict liability crime), *cert. denied*, 114 N.M. 720, 845 P.2d 814 (1993). Under this provision, the jury could have been instructed that, if it found that Simpson's blood alcohol content was .10% or more at the time of the incident, it had to find that he was under the influence of intoxicating liquor. Therefore, Instruction No. 6, which merely allowed the jury to infer intoxication from Simpson's blood alcohol level and other evidence, did not prejudice him; on the contrary, it was more favorable to him than New Mexico law actually warranted.

Simpson also argues that the trial court erred in refusing his Supplemental Requested Instruction No. 2, which stated in part that "[a] violation of speeding laws is not in and of itself sufficient to find the defendant was driving recklessly." Defendant requested this instruction pursuant to Section 66–8–101(C), which provides that violation of speeding laws "shall not per se be a basis for violation of Section 66–8–113 [defining reckless driving]."

■ It was not necessary for the trial court to give Simpson's Supplemental Requested Instruction No. 2 because the court otherwise instructed the jury that speeding was not sufficient to establish reckless driving. The trial court gave Instruction No. 7, which stated: "For you to find that the defendant was driving recklessly, you must find that he drove with willful disregard of the rights or safety of others *and* at a speed or in a manner which endangered or was likely to endanger any person or property." (Emphasis added.) Thus, the jury was instructed

that to find Simpson guilty of reckless driving, it had to find, in addition to speeding, that Simpson "drove with willful disregard of the rights or safety of others." Consequently, we hold that the jury was properly instructed. *See Hudson v. Otero*, 80 N.M. 668, 670, 459 P.2d 830, 832 (1969) ("[I]f instructions, considered as a whole, fairly present the issues and the law applicable thereto, they are sufficient.").

*4. Trial court did not err in admitting results of blood alcohol tests and unidentified statements.*

Simpson next argues that the trial court erred in admitting the results of his blood alcohol tests and some of his statements, not identified in his briefs, because both the tests and the statements were obtained without advising him of his *Miranda* rights.

■ We hold that the trial court did not so err. With regard to the results of the blood alcohol tests, the United States Supreme Court, in *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966), held that withdrawal of blood from a defendant for chemical analysis does not constitute obtaining testimonial evidence and therefore is not protected by the Fifth Amendment. Our own Court of Appeals has followed *Schmerber* and has held that the Fifth Amendment does not apply to results of blood alcohol tests. *See State v. Richerson*, 87 N.M. 437, 441, 535 P.2d 644, 648 (Ct.App.), *cert. denied*, 87 N.M. 450, 535 P.2d 657 (1975); *State v. Myers*, 88 N.M. 16, 21, 536 P.2d 280, 285 (Ct.App.1975). *Cf. State v. Hudman*, 78 N.M. 370, 372, 431 P.2d 748, 750 (1967) (holding defendant's Fifth Amendment rights not violated by obtaining handwriting exemplars, because taking of exemplars compelled defendant to demonstrate a physical characteristic, not speak his guilt). We agree that, since blood alcohol test results are nontestimonial evidence, they are not protected by the Fifth Amendment and hold that defendant's Fifth Amendment rights were not violated when his blood was drawn

4. The current version of § 66–8–102(C) (before its amendment effective January 1, 1994, *see* 1993 N.M.Laws ch. 66, §§ 7, 18) is identical to the version in effect in 1990 (at the time of the accident), § 66–8–102(C) (Repl.Pamp.1987).

without his having previously received a *Miranda* warning.

Simpson does not specify which of his "statements" were allegedly inadmissible. He simply asserts that "all statements and evidence of alcohol content should not be admitted...." Moreover, the State asserts, and defendant does not deny, that he never objected at trial to the admission of any statements. We therefore find that defendant failed to preserve any issue related to the admissibility of any of his statements, and we do not review this issue further. *See* SCRA 1986, 12–216(A) (Repl.Pamp.1992) (to preserve question for review, it must appear that a ruling or decision by the trial court was fairly invoked).

*5. Constitutionality of summary calendar system not reached.*

Finally, Simpson argues that summary affirmance of his convictions by the Court of Appeals violated his right to appeal, to effective assistance of counsel, to equal protection, and to due process. These challenges are premised on several alleged deficiencies in the summary calendar system.

A brief description of New Mexico's calendaring system is necessary to understand defendant's contentions. Rule 12–210 authorizes each appellate court to assign cases to either its general, legal, or summary calendar. Rule 12–210(A). If a case is assigned to the general calendar, a transcript of the trial court proceedings (which often consists, and consisted in this case, of a tape recording of the proceedings) is filed in the appellate court and the parties then submit briefs to the court. Rule 12–210(B). If a case is assigned to the legal calendar, a transcript of the proceedings is not filed in the appellate court and the case is decided on briefs submitted by the parties. Rule 12–210(C). If a case is assigned to the summary calendar, a transcript of proceedings is not filed in the appellate court and the parties do not submit briefs to the court. Rule 12–210(D). Rather, the court files a notice of proposed disposition based on its review of the docketing statement and the record proper. *See* Rule 12–210(A), (D)(2). Appellate or trial counsel then have ten days to file a memorandum arguing for or against the proposed disposition and assignment of the case to the summary calendar. Rule 12–210(D)(3). *See generally State v. Ibarra,* 116 N.M. 486, 864 P.2d 302 (Ct.App.), *cert. granted,* 115 N.M. 602, 856 P.2d 250 (1993).[5]

Simpson's constitutional objections to summary affirmance in this case are based primarily on the following aspects of the summary calendar system: It does not entitle defendants to the trial transcript on appeal; it does not allow attorneys to prepare full briefs on appeal; and it requires preparation of the docketing statement by the trial attorney, who may not recognize errors and issues.

We find that Simpson lacks standing to raise his constitutional objections. To have standing to assert his claims, defendant must show that he has personally suffered some actual or threatened injury from the operation of the summary calendar procedure in his case. *See Riggs v. City of Albuquerque,* 916 F.2d 582, 584 (10th Cir.1990), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991). He has not demonstrated any such injury. First, while he is apparently indigent, he nevertheless had access to the transcript on appeal because his attorney paid for it. His substantive arguments to the Court of Appeals, presented in his memorandum in opposition to the Court's proposed summary affirmance in its first calendar notice, were essentially the same as those presented in this Court on review of his contentions following our grant of certiorari. Thus, he was not injured by—he suffered no prejudice from—the failure of the summary calendar procedure to provide indigent defendants with a transcript on appeal.

Second, he has demonstrated no injury from being denied the opportunity to fully brief his issues in the Court of Appeals. As summarized above, the summary calendar

---

**5.** We have granted certiorari in *Ibarra,* and have consolidated it with *Rodriguez v. State,* 115 N.M. 409, 852 P.2d 682 (1993) (in which we granted certiorari to review an unpublished memorandum opinion of the Court of Appeals), to give further consideration to the constitutionality of various aspects of the summary calendar procedure.

system allows parties to file memoranda in response to an appellate court's proposed disposition. In this case, Simpson filed a fifteen-page memorandum in opposition to the Court of Appeals' first calendar notice proposing summary affirmance. The Court of Appeals reviewed his memorandum and then responded to it in a second calendar notice, again proposing summary affirmance. Under the rule, Simpson was again invited to submit a memorandum responding to the second calendar notice—an invitation he declined. Through this process, Simpson was afforded the opportunity to express his arguments and have them reviewed by the Court of Appeals. Consequently, he was not prejudiced by the summary calendar system's denial of the opportunity to file "briefs."

Finally, Simpson has demonstrated no injury from the requirement that his trial attorney prepare the docketing statement. Here, the same attorney served as defendant's trial and appellate counsel. Simpson has not alleged that his attorney failed to recognize and argue any issues on appeal. In fact, the New Mexico Criminal Defense Lawyers Association affirms that "Simpson had highly qualified counsel to recognize appellate issues as they arose...." Thus, Simpson was not disadvantaged by the requirement that trial counsel prepare the docketing statement.

Simpson also argues that summary affirmance violated Article VI, Section 28 of the New Mexico Constitution, which provides: "Three judges of the court of appeals shall constitute a quorum for the transaction of business, and a majority of those participating must concur in any judgment of the court." The Criminal Defense Lawyers Association supplements this argument by contending that Rule 12–210 does not, but should, guarantee a defendant a full panel of judges to make the calendaring decision and that, although at least two judges always concur in the disposition of a case on the summary calendar, there is no rule or case law, as there should be, that requires the concurring judges to review fully the defendant's memoranda before deciding to concur.

We respond as follows: First, Article VI, Section 28, does not require a full panel of judges to make the calendaring decision; it only requires a majority of judges to concur in a *judgment* of the Court. Here, three judges concurred in the summary affirmance, so there was no violation of Article VI, Section 28. Second, while no rule requires the concurring judges to fully review relevant documents before deciding whether to concur in a disposition, we are confident that they read the docketing statement, memoranda, and calendar notices before making their decision. In the absence of anything but speculation to support defendant's and the Association's arguments, we see no constitutional violation.

For the foregoing reasons, defendant's convictions are affirmed.

**IT IS SO ORDERED.**

RANSOM, C.J., and BACA, FRANCHINI and FROST, JJ., concur.