**Eddie MAES, Petitioner/Appellant,**

v.

**John THOMAS, Warden; and Attorney General of the State of New Mexico, Respondents/Appellees.**

**No. 93–2237.**

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1995.

---

980

Tova Indritz, Federal Public Defender, Albuquerque, NM, for petitioner/appellant.

Margaret E. McLean, Asst. Atty. Gen., Santa Fe, NM (Tom Udall, Atty. Gen., Santa Fe, NM, with her on the brief), for respondents/appellees.

Before MOORE and BARRETT, Circuit Judges, and ROGERS,* Senior District Judge.

ROGERS, Senior District Judge.

Eddie Maes, a New Mexico state prisoner, appeals the district court's denial of his petition for habeas corpus brought pursuant to 28 U.S.C. § 2254. Maes was convicted of two counts of second degree murder and one count of felon-in-possession of a firearm. He raises three issues on appeal: (1) whether the trial court erred when it failed to instruct the jury on a "concerted attack" theory of self-defense;[1] (2) whether the district court erred in holding that he had procedurally defaulted his claim that the trial court had erred in prohibiting evidence that one of the victims had been on probation for a violent

---

* Honorable Richard D. Rogers, United States Senior District Judge for the District of Kansas, sitting by designation.

1. The "concerted attack" or "joint attack" theory of self-defense is described in 40 C.J.S. Homicide § 118 (1991) as follows:

crime; and (3) whether there was sufficient evidence of guilt.

I.

The instant convictions arose from an incident that occurred on March 8, 1989. On that day, Maes, a brother and a friend began drinking alcohol in the morning. Later in the day, they ended up at an old dump where they met three of their friends, Leo Leyba, Kenneth Garcia, and Clyde Leyba. All six were drinking alcohol and some were smoking marijuana. They spent some time arm wrestling and roughhousing. Fistfights and arguments were not uncommon when these young men got together and were drinking. Esmeraldo Martinez, a 43-year-old man who lived in a house next to the dump, arrived in his pick-up truck and invited everyone over to his house in an effort to stop the arguing and fighting. Martinez had known these younger men all his life. At some point, Maes obtained a rifle from Martinez' truck and fired two shots. One of the shots struck and killed Leo Leyba, and the other struck and killed Kenneth Garcia. The events immediately prior to the shooting and the circumstances of the shootings were disputed. Following the shootings, Maes gave the gun to Martinez, got in his vehicle with his brother and friend, and drove to the local sheriff's office where he turned himself in.

On March 22, 1989, Maes was charged with two counts of first degree murder, one count of assault with a deadly weapon, and one count of felon-in-possession of a firearm. On July 20, 1989, following a five-day trial, the jury found Maes guilty of two counts of second degree murder and one count of felon-in-possession of a firearm. The jury acquitted Maes of the aggravated assault charge.

Maes appealed his convictions to the New Mexico Court of Appeals (NMCOA). The original docketing statement filed by his counsel listed six issues on appeal. For the

Where accused is attacked by one or more persons, or is attacked by one person and others are acting with the assailant or are present and aiding and encouraging him, he has the right to act in self-defense against all and, in a proper case, to kill one or all.

purpose of this appeal, we need only consider two of the issues. Maes contended that the trial court erred in (1) excluding any mention of Leo Leyba's probation for a felony conviction, and (2) denying certain defense jury instructions. The docketing statement contained the following argument on the jury instructions issue:

> The court denied defendant's tendered instructions 8, 9, 10 and 11. The defendant's instructions would have allowed for self defense when not only the victim but a second assailant approached the defendant. The Court allowed only the threatening conduct of the victim in question to be considered by the jury.
>
> Just as the concept of transferred intent applies to a defendant who shoots at one and kills another, so should the same concept apply to self defense. Such procedure violated defendant's Fifth, Sixth, Fourteenth Amendments to the U.S. Const. and Art II § 14 and 18 of the N.M. Const.

In response to the docketing statement, the NMCOA issued a calendar notice which assigned the case to the summary calendar and proposed summary affirmance.[2] As to the probation issue, the NMCOA found that Maes had not specified the "type of felony conviction Leyba was on probation for and what connection, if any, that fact had to defendant's fear and belief he had to defend himself." As to the jury instruction issue, the NMCOA determined that review of this issue was not necessary because the defendant had not cited any authority for its argument that the concept of transferred intent should apply to self-defense.

Maes then filed a motion to amend the docketing statement and a memorandum in opposition to summary affirmance. Maes, through appellate counsel, sought to amend the docketing statement to indicate that "the victim was on probation for a violent crime, probably aggravated battery." He also sought to clarify the jury instructions argument as follows:

The docketing statement describes the issue as one of transferred intent and self-defense. However, conversations with trial counsel made clear that the phrase "transferred intent" misdescribes the argument of the defense at trial. This memorandum accurately describes the argument.

The memorandum went on to delineate the trial court's error as a failure to allow instructions on a "concerted attack" theory of self-defense. Maes argued that the court should have allowed the jury to consider whether the "concerted action" of Leyba and Garcia caused him to be placed in apparent danger of immediate death or great bodily harm.

A second calendar notice denied the motion to amend and proposed summary affirmance of Maes' convictions. Maes filed a second memorandum in opposition to summary affirmance. A third calendar notice assigned the case to the general calendar. As a result of the third calendar notice, Maes filed his brief-in-chief. This brief raised only two issues: the jury instructions argument and a jury composition argument. In response to Maes' brief, the State recognized that the defendant was raising the issue of the trial court's failure to instruct on a concerted action theory of self-defense. The State made the following admission:

> The State acknowledges any issue concerning the self-defense jury instructions was preserved. The Defendant tendered jury instructions and argued the position to the trial court.

The NMCOA did not address the merits of the probation claim because it found that the petitioner had waived the claim by not raising it in his brief-in-chief. The NMCOA further determined that it need not reach the jury instructions argument because it was "not raised or preserved below" and the issue did not raise a fundamental error. The NMCOA stated: "Both the language of the tendered instructions and the arguments

---

**2.** In New Mexico, the NMCOA assigns a criminal case to its general, legal or summary calendar based upon the docketing statement and the record. Cases are assigned to the summary calendar where the court determines that the applica-

tion of legal principles to the facts is clear and no genuine issue of substantive evidence is involved. *State v. Anaya*, 98 N.M. 211, 647 P.2d 413, 414 (1982).

made to the trial court support a conclusion that the court was requested to instruct the jury to consider whether there was an appearance of danger based on the attack of one or the other of the victims rather than a joint attack by both victims." The NMCOA went on to conclude that the defendant also was not entitled to any relief based upon a plain error analysis. The NMCOA affirmed Maes' convictions.

Maes filed a writ of certiorari with the New Mexico Supreme Court in which he again argued only the two issues raised in his brief-in-chief. The New Mexico Supreme Court denied Maes' writ on June 22, 1990. Maes then filed a state petition for writ of habeas corpus in which he raised the same issues as those raised in this case. The trial court summarily dismissed the habeas petition. Maes sought review by the New Mexico Supreme Court by filing a writ of certiorari. The petition for writ of certiorari was denied.

Maes filed the instant writ of habeas corpus with the United States District Court for the District of New Mexico on June 20, 1991. The writ was assigned to a magistrate for further proceedings. After examination of exhaustive briefs, the magistrate, in a thorough opinion, dismissed Maes' writ. As to the jury instructions issue, the magistrate found that the record supported the NMCOA's conclusion that the "concerted attack" theory of self-defense had not been raised at trial. The magistrate, however, determined that this issue had not been procedurally defaulted because the NMCOA had considered the claim under a plain error analysis. In moving to the merits of the issue, the magistrate decided that Maes' due process rights had not been violated by the trial court's refusal to instruct on the "concerted attack" theory of self-defense.[3] As to the probation argument, the magistrate concluded that Maes had procedurally defaulted on the issue because he had failed to raise the issue in his appellate brief before the NMCOA. Finally, as to the sufficiency of

evidence issue, the magistrate determined that sufficient evidence existed in the record to establish that Maes did not act in self-defense when he killed Leyba and Garcia. Maes filed objections to the findings of the magistrate. The State failed to file any objections.

The district court adopted the findings and recommended disposition of the magistrate's order. This appeal followed.

## II.

The court shall turn initially to the jury instructions argument. The respondent raises two arguments in defending this claim. First, the respondent contends that Maes failed to tender this defense during the trial. Second, the respondent argues that the petitioner's due process rights were not violated by the refusal to give a concerted attack instruction.

The court is troubled by the procedural background of this issue. At the conclusion of the trial, the petitioner's attorney tendered a self-defense instruction which provided in pertinent part: "The killing is self-defense if: 1. There was an appearance of immediate danger of death or great bodily harm to the defendant as a result of Leo Leyba approaching with a knife or Kenneth Garcia approaching with a chain." In arguing the instructions at trial, petitioner's counsel stated:

> [T]he defendant knew of their conduct while intoxicated in previous occasions, which could justify an ordinary person, being fearful and terrorized, by more than one person coming at them. Also, the deadly weapons. Let's say they believe the chain was there but not the knife, he didn't shoot to defend himself, but he did shoot while he was in fear. He wasn't defending himself, perhaps, because Kenneth wasn't coming at him, maybe, but just the fact of the chain there, and all the fighting, and people are drunk, people are

---

**3.** In reaching the merits, the magistrate assumed that New Mexico would recognize the "concerted attack" theory of self-defense. The magistrate noted that both parties had admitted that the right of self-defense from joint attackers had not been addressed by New Mexico law. The magistrate believed that New Mexico would recognize the defense because the New Mexico uniform jury instructions on self-defense did not exclude the possibility of such a defense.

approaching him, more than one, and making statements, all of that combined in an ordinary person may make them fearful enough to have difficulty reasoning out each step.

The state trial judge believed that the petitioner's attorney was asserting a "transferred intent" theory[4] which he believed was improper. He said it would "be loathe to give an instruction which basically allows the appearance of danger or death from other party resulting in the death of the victim." On appeal, the NMCOA found that the "concerted attack" jury instruction was not tendered and therefore not preserved for appeal.

The suggestion by the NMCOA that the issue of whether a concerted attack instruction should have been given was not preserved at the trial court is persuasive. Petitioner has suggested that the requested instructions were "awkwardly drafted." This is charitable interpretation since a reading of the tendered instructions appears to substantiate the NMCOA's conclusion that they did not raise the issue of joint attack. Nevertheless, as a result of events that have followed, the court finds it unnecessary to consider whether this issue was procedurally defaulted. The magistrate concluded that this issue had not been procedurally defaulted because the NMCOA had considered the claim under a plain error analysis. The respondent failed to object to the magistrate's findings and recommendations. This failure constitutes waiver of the procedural default argument. *Moore v. United States,* 950 F.2d 656, 659 (10th Cir.1991). *But see Meadows v. Legursky,* 904 F.2d 903, 907 (4th Cir.) *(en banc)* (procedural default defense not raised before magistrate and district court is not waived where state court's dismissal order was before magistrate), *cert. denied,* 498 U.S. 986, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990). Accordingly, the court shall turn to the merits of the jury instructions argument.

In a habeas proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden. *Lujan v. Tansy,* 2 F.3d 1031, 1035 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1074, 127 L.Ed.2d 392 (1994). A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial. *Shafer v. Stratton,* 906 F.2d 506, 508 (10th Cir.), *cert. denied,* 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 402 (1990). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977) (footnote omitted). The question in this proceeding is not whether the instruction is "undesirable, erroneous, or even 'universally condemned,' " but whether the instruction so infected the trial that the resulting conviction violates due process. *Id.* (quoting *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155, 94 S.Ct. at 404. The degree of prejudice from the instruction error must be evaluated in the context of the events at the trial. *United States v. Frady,* 456 U.S. 152, 169, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982).

Having carefully reviewed the record, the court is not convinced that the failure of the trial court to instruct on the joint attack theory of self-defense constituted a violation of due process. The trial court instructed the jury on self-defense as to each murder charge. The self-defense instructions did not preclude the petitioner from arguing his joint attack theory of self-defense. While the instructions directed the jury to consider the appearance of danger of death or great bodi-

---

4. The doctrine of transferred intent is defined as follows:

Under the common-law doctrine of transferred intent, a defendant, who intends to kill one person but instead kills a bystander, is deemed the author for whatever kind of homicide would have been committed had he killed the intended victim.

2 C. Torcia, Wharton's Criminal Law § 144 (14th ed. 1979).

ly harm to the petitioner as the result of each victim approaching separately, the instructions also directed the jury to "consider all the evidence in the case." Given the context of the case, the petitioner had every opportunity to argue the joint attack theory, and the jury had the opportunity to consider it. The failure to specifically instruct on this theory, in light of the circumstances of this case, does not rise to the level of an error that rendered the trial so fundamentally unfair as to cause a denial of a fair trial. *See, e.g., Nickerson v. Lee,* 971 F.2d 1125, 1138 (4th Cir.1992) (failure to give self-defense instruction even where sufficient evidence to warrant it did not rise to due process violation), *cert. denied,* —— U.S. ——, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993); *Frey v. Leapley,* 931 F.2d 1253, 1255 (8th Cir.1991) (failure to give appropriate theory-of-defense instruction, without more, is not a due process violation).

## III.

The second issue has two parts: (a) whether the district court erred in holding petitioner procedurally defaulted his "probation claim" and (b) whether the state trial court denied petitioner his right to due process when it prohibited him from presenting evidence that he knew Leo Leyba had been on probation for a violent crime. We need only reach the second part if we find no procedural default.

The aforementioned discussion of the background of this case contains some of the information necessary to understand the procedural default aspect of this argument, but some additional background is required. At the time of the incident, petitioner was aware that Leyba had been convicted of a felony but did not know the nature of it. He had given Leyba rides to the probation office, and Leyba had told him he was on probation or parole. In opening statement, one of petitioner's attorneys stated that petitioner "knew about Leyba being on probation." The prosecutor sought a bench conference and the court reminded counsel that the court had already granted the prosecution's motion to exclude evidence regarding Leyba's probation and petitioner's knowledge of it. This ruling apparently occurred during

an unrecorded in-chambers hearing attended by petitioner's other counsel. At the bench conference, counsel for petitioner acknowledged the court's ruling, and the defense adhered to the ruling throughout the trial.

In 1984, Leyba had been indicted for two counts of felony aggravated battery against two women arising from a barroom incident. Leyba pleaded guilty to a reduced charge of misdemeanor battery and was placed on probation for six months. In 1987, Leyba was convicted of felony commercial burglary. His sentence was suspended and he was placed on probation for eighteen months.

We must initially consider whether, as argued by the State, Maes' "probation argument" is barred by the procedural default doctrine. Maes argues that he did not default this claim because (1) the NMCOA effectively precluded him from raising it by denying his motion to amend the docketing statement; (2) under New Mexico Rules of Appellate Procedure, an appellant does not default an issue already adversely decided by the NMCOA in its summary calendar by failing to respond to the adverse ruling; and (3) none of the procedural bars purportedly applied by the New Mexico courts was "adequate" for procedural default purposes.

■ In a habeas proceeding, we do not address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless cause and prejudice or a fundamental miscarriage of justice is shown. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2564, 115 L.Ed.2d 640 (1991); *Steele v. Young,* 11 F.3d 1518, 1521 (10th Cir.1993).

■ Maes does not contest the independence of the state court's decision. A state court finding of procedural default is independent if it is separate and distinct from federal law. *See Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985). The procedural bar applied to Maes' "probation argument" was obviously an "independent" state ground as it was the exclusive basis for the state court's holding.

Maes does, however, argue that the state court's finding of procedural default is not an "adequate" state ground. In *Andrews v. De-*

*land,* 943 F.2d 1162, 1188 n. 40 (10th Cir. 1991), *cert. denied,* 502 U.S. 1110, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992), this court explained this aspect of the procedural default doctrine as follows:

A state court finding of procedural default is adequate if it is "strictly or regularly followed." *Hathorn v. Lovorn,* 457 U.S. 255, 263, 102 S.Ct. 2421, 2426–27, 72 L.Ed.2d 824 (1982). Thus, the procedural rules must be applied "evenhandedly to all similar claims." *Id. see Ford v. Georgia,* [498] U.S. [411], [421], 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991); *Dugger v. Adams,* 489 U.S. at 411 n. 6, 109 S.Ct. at 1217 n. 6; *Gutierrez v. Moriarty,* 922 F.2d 1464, 1471 (10th Cir.1991); *Osborn v. Shillinger,* 861 F.2d 612, 616–21 (10th Cir.1988).

Maes contends that the NMCOA has failed to consistently apply the procedural bar rule it applied in his case. He asserts that the New Mexico appellate courts exercise unfettered discretion to waive the procedural rule barring issues presented, briefed and then decided in the summary calendar procedure, but not again raised in an appellant's brief-in-chief.[5] In support of this position, he relies upon *Swafford v. State,* 112 N.M. 3, 810 P.2d 1223 (1991) and *State ex rel. N.M. State Police Dept. v. One 1984 Pontiac 6000,* 111 N.M. 85, 801 P.2d 667 (Ct.App.1990).

The petitioner made this same argument below and it was rejected by the magistrate. The magistrate found that the procedural bar applied in petitioner's case had been regularly followed in New Mexico. The magistrate distinguished the cases cited by the petitioner.

■ The uneven application of state procedural default rules in general does not establish that the application of a procedural default rule in a particular case is not "adequate." *Andrews,* 943 F.2d at 1190. The consideration of adequacy for the purpose of the procedural default doctrine requires ap-

plication of the rule "evenhandedly to all similar claims." *Dugger v. Adams,* 489 U.S. 401, 410–12, 109 S.Ct. 1211, 1217–18, 103 L.Ed.2d 435 (1989); *Hathorn v. Lovorn,* 457 U.S. 255, 263, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982). "The test then is whether the [state] courts' actual application of the particular procedural default rule to all "similar" claims has been evenhanded 'in the vast majority' of cases." *Andrews,* 943 F.2d at 1190. *Gutierrez v. Moriarty,* 922 F.2d 1464, 1469–71 (10th Cir.), *cert. denied,* 502 U.S. 844, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991), a case which addressed the adequacy of New Mexico's procedural default rules and upon which petitioner relies heavily in this case, is not to the contrary. In *Gutierrez,* we considered the application of the New Mexico procedural default rules only to the same issues that were raised in that case. *See Andrews,* 943 F.2d at 1190.

■ A review of New Mexico law reveals that the New Mexico courts have consistently applied the rule that deems all issues abandoned that are not raised in an appellant's brief-in-chief. *See State v. Wilson,* 116 N.M. 793, 867 P.2d 1175 (Ct.App.1994); *State v. Pettigrew,* 116 N.M. 135, 137–38, 860 P.2d 777, 779–80 (Ct.App.1993); *State v. Manes,* 112 N.M. 161, 163, 812 P.2d 1309, 1311 (Ct. App.1991), *cert. denied,* 112 N.M. 77, 811 P.2d 575, *cert. denied,* 502 U.S. 942, 112 S.Ct. 381, 116 L.Ed.2d 332 (1991); *State v. Gattis,* 105 N.M. 194, 196, 730 P.2d 497, 499 (Ct.App. 1986); *State v. Fish,* 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.), *cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985); *State v. Martinez,* 100 N.M. 532, 534, 673 P.2d 509, 511 (Ct.App.1983); *State v. Thoreen,* 91 N.M. 624, 627, 578 P.2d 325, 328 (Ct.App.1978); *State v. Vogenthaler,* 89 N.M. 150, 152, 548 P.2d 112, 114 (Ct.App.1976). The two cases, relied upon by petitioner, do not suggest otherwise or indicate that the New Mexico courts have unfettered discretion to consider

---

**5.** As noted previously, petitioner has also argued that this issue should not have been found to be abandoned under New Mexico law. Petitioner contends that *State v. Simpson,* 116 N.M. 768, 867 P.2d 1150 (1993) supports this contention. We disagree. In *Simpson,* the New Mexico Supreme Court held that an appellant did not waive or abandon an issue by not responding to an appellate summary calendar notice. *Simpson* does not address the situation involved in this case which is the failure of a party to raise an issue in its brief-in-chief. As the subsequent discussion suggests, New Mexico has consistently applied the abandonment rule to this occurrence. Petitioner's reliance upon *Simpson* in this case is misplaced.

claims not raised in an appellant's brief-in-chief. In *Swafford,* the petitioner contended in a post-conviction proceeding that he had received an unconstitutional sentence. He had not raised the issue in his direct appeal. The New Mexico Supreme Court allowed him to raise the issue where both of the following factors were present: (1) important constitutional issues were involved; and (2) sentences that may be beyond legislative authority. 112 N.M. at 6 n. 1, 810 P.2d at 1226 n. 1. In allowing consideration of the issues raised by the petitioner, the Court specifically noted that it had always been reluctant to consider issues that could have been, but were not, raised on direct appeal, "even where the issues raise important constitutional rights." *Id.* (citing *State v. Gillihan,* 86 N.M. 439, 524 P.2d 1335 (1974)). In *State Police,* the NMCOA determined that a party was not precluded from arguing an issue in its brief-in-chief after the case is assigned to the nonsummary calendar where the party had not specifically responded to the issues in opposing summary disposition on the summary calendar. 111 N.M. at 89, 801 P.2d at 671.

This court agrees with the lower court that these cases do not support the contention of the petitioner. The specific circumstances of those cases differ substantially from those of this case. The holdings in those cases do not indicate that the New Mexico courts would apply a different result when faced with the facts of this case.

Maes has also argued that he has demonstrated "cause" for his state default. He contends that the failure of the NMCOA to grant his motion to amend prevented him from effectively arguing the exclusion of the probation evidence.

In *McCleskey v. Zant,* 499 U.S. 467, 493–94, 111 S.Ct. 1454, 1469–70, 113 L.Ed.2d 517 (1991), the Supreme Court explained the "cause" requirement as follows:

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. *Murray v. Carrier,* 477 U.S. [478], at 488 [106 S.Ct. 2639, 2645, 91 L.Ed.2d 397] [ (1986) ]. Objective

factors that constitute cause include " 'interference by officials' " that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Ibid.* In addition, constitutionally "ineffective assistance of counsel . . . is cause." *Ibid.* Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. *Id.,* at 486–488 [106 S.Ct. at 2644–45].

■ The cause noted by the petitioner is not an appropriate external factor. Petitioner has failed to show why his counsel could not have properly raised this issue in the first instance. The information was available to counsel and could have been presented. Petitioner has made no suggestion that his counsel's actions constituted ineffective assistance of counsel. Accordingly, we find an inadequate showing of cause for the purposes of procedural default. With this finding, we need not consider the issue of prejudice.

■ Even if we were to reach the merits of this argument, we would find that the petitioner is not entitled to any relief. In a habeas proceeding claiming a denial of due process, "we will not question the evidentiary or procedural rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair." *Tapia v. Tansy,* 926 F.2d 1554, 1557 (10th Cir.), *cert. denied,* 502 U.S. 835, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991). It is the materiality of the excluded evidence to the presentation of the defense that determines whether a petitioner has been deprived of a fundamentally fair trial. *Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988).

■ The court is somewhat handicapped in considering this issue because the trial court's ruling on the exclusion of this evidence occurred during an unrecorded in-chambers meeting. The record fails to contain the basis for the trial court's ruling. The evidence may have been excluded as cumulative or as evidence whose probative value was outweighed by its prejudicial ef-

fect. In any event, given the circumstances of this case, we do not find that the exclusion of evidence on Leyba's probation status rendered the trial so fundamentally unfair as to merit habeas relief. The petitioner was allowed, and did present, evidence of Leyba's violent past. The State made no effort to dispute this evidence. The State offered no evidence to rebut petitioner's testimony that Leyba was violent when drinking or petitioner's version of Leyba's past incidents of violence. The petitioner has argued that this evidence could have bolstered his credibility, but we find no fundamental unfairness occurred where his credibility on the issues of Leyba's past violent behavior was never challenged. *See Lujan*, 2 F.3d at 1034 (excluded evidence that would have more "clearly established" a fact does not rise to level of fundamental unfairness).

### IV.

Finally, we consider the petitioner's argument that the evidence was insufficient for a jury to conclude beyond a reasonable doubt that he did not act in self-defense. Petitioner argues that the record lacks evidence demonstrating that he did not act in self-defense.

 A sufficiency of the evidence claim presents a mixed question of fact and law. *Case v. Mondragon*, 887 F.2d 1388, 1392 (10th Cir.1989), *cert. denied*, 494 U.S. 1035, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990). A determination of a mixed question of fact and law carries no presumption of correctness and is to be reviewed de novo on federal habeas review. *Id.* at 1393. Habeas corpus relief is available if the court determines, after considering all the trial evidence in the light most favorable to the prosecution, that a rational trier-of-fact could not have found each separate element of the crime charged was proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904, 111 S.Ct. 269, 112 L.Ed.2d 225 (1990).

The relevant inquiry here is whether any rational trier of fact could have found the absence of self-defense beyond a reasonable doubt. After a thorough review of the evidence, we find that the jury could have rejected petitioner's self-defense claim and convicted him of two counts of second-degree murder. The only evidence of self-defense came from the testimony of the petitioner. He was the only witness to unequivocally place weapons in the hands of Leyba and Garcia. The testimony of the other witnesses suggested that Leyba and Garcia were not armed. The testimony of some witnesses also suggested that Leyba and Garcia were not dangerous. A rational jury, confronted with the evidence presented in this case, could have found beyond a reasonable doubt that the killings were not made in self-defense and thus constituted murder.

In sum, the court finds that the petitioner is not entitled to relief under 28 U.S.C. § 2254. The decision of the district court is hereby AFFIRMED.