The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: November 15, 2022

**No. A-1-CA-39723**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**SHAWN D. DOYAL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Hector H. Balderas, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Gary C. Mitchell, P.C.
Gary C. Mitchell
Ruidoso, NM

for Appellant

## OPINION

**BOGARDUS, Judge.**

{1}     Defendant Shawn D. Doyal appeals his conviction for great bodily injury by vehicle (reckless driving), contrary to NMSA 1978, Section 66-8-101(E) (2016). Defendant argues (1) the district court erred in failing to give Defendant's requested jury instructions; (2) the evidence was insufficient to support his conviction; and (3) the district court erred in the manner in which it seated the witnesses and the jury during the trial due to COVID-19 considerations. We affirm.

## BACKGROUND

{2}     Defendant lost control of his truck as he was driving through Cloudcroft, New Mexico, and struck an oncoming car causing serious injuries to both the victims, one on the driver's side and the other, on the passenger's side. Defendant was unfamiliar with the road, driving it for the first time the night of the accident. Defendant drove through the populous part of Cloudcroft at the speed limit, but as soon as he left the area, he accelerated from thirty-five to sixty-six miles per hour over a one-half-mile stretch of the highway. Defendant testified that he had seen elk and deer both on and beside the road. The section of the road was curvy and mountainous, and there were numerous signs along the roadside describing dangerous conditions and notifying drivers of the reduced speed limit. These signs included three thirty-five mile-per-hour speed limit signs, a safety corridor sign, a sign recommending truckers to use a lower gear because of a six percent downgrade, and a sign warning of a sharp,

fishhook-shaped curve ahead. Defendant drove into the fishhook-shaped curve, lost control of his vehicle, crossed into the oncoming lane, and struck the driver's side of the victims' car. Both victims, a husband and wife, were injured; the wife, who was the driver, suffered great bodily harm, including permanent injuries.

{3}    The State charged Defendant with one count of great bodily harm by vehicle due to reckless driving, one count of driving on the wrong side of the road, and one count of speeding. The trial took place during the COVID-19 pandemic, in a small courtroom where the witnesses, the victims, and spectators sat among the jurors. Everyone sat six feet apart and wore a mask due to social distancing guidelines in effect at the time.

{4}    At the close of the State's case, Defendant moved for directed verdict, arguing that speeding alone is insufficient to prove willful and wanton disregard of the safety of others. The district court denied the motion. Further, Defendant requested that the district court give two special jury instructions, which deviated from the uniform jury instructions. Defendant's requested Jury Instruction No. 4 informed the jury that speeding is insufficient to constitute reckless driving. Defendant's requested Jury Instruction No. 5 modified the term "reckless" as defined by UJI 14-241 NMRA. The district court refused both of Defendant's requested jury instructions.

{5}    The jury found Defendant guilty on all counts. Defendant then moved to set aside the verdict and for a new trial by renewing his motions made at trial,

"especially [those] considering jury instructions and directed verdict," and further argued that jury intimidation and influence took place when witnesses sat among the jury. The district court denied Defendant's motion in a thorough written order. Defendant appeals.

**DISCUSSION**

**I.      The District Court Did Not Err in Refusing to Give Defendant's Requested Jury Instructions**

{6}      Defendant argues that the district court erred when it refused to give Defendant's requested jury instructions. "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438. "There is a presumption of correctness in the district court's rulings. Accordingly, it is [the d]efendant's burden on appeal to demonstrate any claimed error below." *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (alterations, internal quotation marks, and citation omitted). Jury instructions must present the law fairly and accurately. *See Gonzales v. N.M. Dep't of Health*, 2000-NMSC-029, ¶ 28, 129 N.M. 586, 11 P.3d 550. When a uniform jury instruction exists, as in this case, the district court must use the instruction without substantive modification. *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775. The district court does not err when it declines to use "an instruction that is confusing or misleading." *State v. Soutar*, 2012-NMCA-024, ¶ 21, 272 P.3d 154. We consider each requested instruction in turn.

## A.    Defendant's Requested Jury Instruction No. 4

{7}    The district court refused Defendant's requested Jury Instruction No. 4, which would have instructed the jury that "speeding alone is insufficient to constitute reckless driving." Defendant requested the instruction based on *State v. Munoz*, which held that "speeding alone is insufficient to constitute recklessness." 2014-NMCA-101, ¶ 10, 336 P.3d 424.

{8}    Defendant argues that by refusing to give this instruction the district court "fail[ed] to let [the jury] know what the law is." We disagree. Our Supreme Court resolved this issue in *State v. Simpson*, 1993-NMSC-073, 116 N.M. 768, 867 P.2d 1150. In *Simpson*, the defendant argued that the district court erred in declining his requested instruction, which stated in part, "a violation of speeding law is not in and of itself sufficient to find the defendant was driving recklessly." *Id.* ¶ 20 (alteration and internal quotation marks omitted). Instead, the district court provided an instruction practically identical to the one provided to the jury here. *See id.* ¶ 21 (instructing the jury that "to find that the defendant was driving recklessly, [the jury] must find that [the defendant] drove with willful disregard of the rights or safety of others and at a speed or in a manner which endangered or was likely to endanger any person or property" (emphasis and internal quotation marks omitted)). Our Supreme Court held that it was unnecessary for the district court to give the defendant's requested instruction because the district court had already instructed the jury that

4

speeding alone was insufficient to establish reckless driving. *Id.* The Supreme Court emphasized that the jury instruction that was given required the prosecution to meet two elements: "willful disregard of the rights or safety of others" and speeding. *Id.* (internal quotation marks omitted). The two elements in the instruction made it clear to the jury that something besides speeding was required to convict the defendant. *See id.*

{9}     The same reasoning applies here. Pursuant to UJI 14-241, the district court instructed the jury that "[f]or you to find that [D]efendant operated a motor vehicle in a reckless manner, you must find that [D]efendant drove with willful disregard of the safety of others *and* at a speed . . . likely to endanger any person." (Emphasis added.) Thus, the district court instructed the jury that to find Defendant guilty of reckless driving, it had to find, in addition to speeding, that Defendant "drove with willful disregard of the safety of others." Accordingly, the district court did not err in denying Defendant's requested Jury Instruction No. 4.

**B.     Defendant's Requested Jury Instruction No. 5**

{10}     The district court also refused Defendant's requested Jury Instruction No. 5, which modified UJI 14-241. Defendant contends that his modification uses the proper criteria and includes elements required by statute and case law that the district court ignored and that UJI 14-241 does not contain. We disagree.

{11}     Defendant's proposed instruction sought to add the following language to UJI 14-241:

> [D]efendant knew or should have known [his] conduct created a substantial and foreseeable risk, [he] disregarded that risk[,] and [he] was wholly indifferent to the consequences of the conduct and to the welfare and safety of others.
>
>      Ordinary negligence or careless driving is not a willful disregard of the safety of others.

Defendant contends his proposed modification to UJI 14-241 more accurately presents the state of mind requirement as stated in *Valencia v. Dixon*, 1971-NMCA-108, 83 N.M. 70, 488 P.2d 120. Further, Defendant argues that UJI 14-241, unless modified, fails to present to the jury the element of "conscious wrongdoing" as required by *State v. Yarborough*, 1996-NMSC-068, ¶ 22, 122 N.M. 596, 930 P.2d 131, and *State v. Omar-Muhammad*, 1985-NMSC-006, ¶¶ 20-22, 102 N.M. 274, 694 P.2d 922.[1]

{12}     Defendant fails to explain how *Valencia* modifies the recklessness standard used in UJI 14-241. *Valencia* is a civil case where this Court reversed a grant of directed verdict for the plaintiff and concluded that the defendant's guilty plea for

---

[1]Defendant also argues that the element of due caution and circumspection in NMSA 1978, Section 66-8-113 (1987) creates a requirement of subjective knowledge by a defendant of the danger or risk involved to others by his actions. However, this argument was only raised in the reply brief, therefore we do not address it. *See Guest v. Berardinelli*, 2008-NMCA-144, ¶ 36, 145 N.M. 186, 195 P.3d 353 ("[W]e do not consider arguments raised in a reply brief for the first time.").

reckless driving, together with other facts and circumstances, created an issue of fact regarding whether the defendant was heedless or reckless in operating his vehicle pursuant to the automobile guest statute. 1971-NMCA-108, ¶ 14. In so ruling, this Court identified the defendant's state of mind to be the distinguishing factor between negligence and reckless disregard. *Id.* ¶ 17. "To be heedless or reckless, evidence must show that this particular state of mind is one of utter irresponsibility or conscious abandonment of any consideration for the safety of [others]." *Id.* Consistent with the holding in *Valencia*, the district court's instruction here required the jury to find that Defendant "drove with willful disregard of the safety of others." *See* UJI 14-241. The instruction given therefore required the State to prove a state of mind beyond civil negligence—one where Defendant acted with a conscious disregard of the safety of others.

{13}     As to Defendant's argument that the instruction given by the district court was insufficient because it failed to convey the element of conscious wrongdoing, Defendant ignores Jury Instruction No. 10, which instructed the jury that to find Defendant guilty, the State must prove beyond a reasonable doubt that "[D]efendant acted intentionally when he committed the crime." *See* UJI 14-141 NMRA. Conscious wrongdoing is "the purposeful doing of an act that the law declares to be a crime." *State v. Brown*, 1996-NMSC-073, ¶ 22, 122 N.M. 724, 931 P.2d 69 (internal quotation marks and citation omitted). Considered together, Jury

7

Instructions Nos. 6 and 10 fairly and accurately present the law. Accordingly, Defendant has failed to meet his burden to demonstrate that the district court erred in refusing to give Defendant's requested Jury Instruction No. 5.

## II. The Evidence Was Sufficient to Support Conviction for Great Bodily Harm by Reckless Driving

{14} Defendant challenges the sufficiency of the evidence regarding recklessness, claiming that his only transgression was to drive too fast, which is insufficient to prove he acted in a reckless manner. We conclude that the State provided sufficient evidence, beyond Defendant's act of speeding, for a rational jury to find that Defendant drove in a reckless manner.

{15} "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* ¶ 53 (alteration, internal quotation marks, and citation omitted). When reviewing for substantial evidence, we "view[] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* ¶ 52 (internal quotation marks and citation omitted). We also disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-

8

NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. With these principles in mind, we consider whether the jury "could have found the essential elements of the crime beyond a reasonable doubt." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted).

{16} We measure the sufficiency of the evidence against the jury instructions given, which become the law of the case. *See State v. Jackson*, 2018-NMCA-066, ¶ 22, 429 P.3d 674. The district court instructed the jury that a conviction for great bodily harm by reckless driving required a finding that Defendant "operated a motor vehicle . . . in a reckless manner" and further defined reckless as driving with "willful disregard of the safety of others and at a speed or in a manner that endangered or was likely to endanger any person." *See* UJI 14-240D NMRA; UJI 14-241.

{17} Defendant concedes that he was speeding, but argues that "speeding alone is insufficient to constitute recklessness." *See Munoz*, 2014-NMCA-101, ¶ 10. We agree with this general statement, however, speeding is just one factor for the jury to consider when addressing whether a defendant acted recklessly. *See id.* ¶ 13.

{18} Defendant cites a number of cases in which a driver was convicted of reckless driving that he contends contain facts "far worse than [the facts] here." Nonetheless, our jurisprudence supports a totality of the circumstances approach in which a jury considers all contributing factors to determine whether a defendant acted recklessly. *See id.* (holding that speeding "is one of many other contributing factors for the jury

9

to consider when addressing whether [the d]efendant acted recklessly"). In assessing the totality of the circumstances, we look to "a driver's actions leading up to the collision . . . as a factor contributing to recklessness." *Id.*

{19} For example, in *State v. Sandoval*, 1975-NMCA-096, ¶ 7, 88 N.M. 267, 539 P.2d 1029, the defendant's driving speed in excess of the legal speed limit, the heavily trafficked street where the accident took place, the defendant's actions before the accident,[2] and the fact that the defendant had been drinking, considered together was sufficient evidence to support the defendant's conviction of driving recklessly. Similarly, in *Munoz*, 2014-NMCA-101, ¶ 1, this Court concluded that the defendant disregarding a police warning to slow down, veering his vehicle into the crash zone, laughing, and speeding provided sufficient evidence for a rational jury to find that the defendant acted recklessly.

{20} The circumstances presented to the jury in this case, particularly those actions leading up to the collision, were also sufficient to establish recklessness. Before the collision, Defendant encountered numerous signs warning him of the danger of the road ahead. Further, Defendant testified that he was unfamiliar with the road, that it was already dark, and that he was wary of deer and elk on the road. The curvy road

---

[2]The defendant in *Sandoval* "revved up his engine, slammed on his breaks," "engaged in showing off of a 'hot-rod' type vehicle," and would "rev up and slow down the engine and attempt to 'leave rubber' when he passed young members of the opposite sex." *Id.*

10

only had two lanes, with no passing lane, and a mountain on one side of the road with a guardrail on the other to prevent vehicles from going over the drop-off. Despite these circumstances, Defendant accelerated from thirty-five to sixty-six miles per hour over a one-half-mile stretch of the highway leading to the curve. The fact that the collision occurred immediately after passing all the warning signs, that it was already dark, and that Defendant was unfamiliar with the road are compelling circumstances from which a reasonable jury could infer that Defendant was not only speeding but that he also willfully disregarded the warnings and the condition of the roadway. It was also reasonable for the jury to find that disregarding the warnings and the hazardous road terrain while accelerating to almost twice the speed limit constituted a disregard for the rights and safety of others.

{21} Defendant argues that the excessive number of signs on the highway were not a warning as to the danger of the road ahead, but rather a distraction; moreover, the guardrail and a cut in the trees created the appearance that the road went straight. However, having heard Defendant's explanation, we presume that the jury found otherwise, and we decline to reweigh the evidence. *See Rojo*, 1999-NMSC-001, ¶ 19 (noting that "the jury is free to reject [the d]efendant's version of the facts").

{22} Thus, viewing all evidence in the light most favorable to the verdict, and disregarding contrary evidence and inferences, we conclude that there was sufficient evidence to support Defendant's convictions for great bodily harm by reckless

driving. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**III.    The District Court Did Not Err in the Manner in Which It Seated Witnesses and the Jury Due to COVID-19 Considerations**

{23}    Because of the COVID-19 pandemic, the district court took numerous actions to implement precautionary measures designed to keep court staff and trial participants safe. One such measure during trial was special seating in the gallery of the courtroom in order to accommodate safe social distancing. Jurors, witnesses, and spectators were all seated in the gallery, with the caveat that the individuals would be socially distanced, wearing facemasks, which would conceal any facial expressions, and seated in a forward-facing manner. After the jury found Defendant guilty, Defendant moved to set aside the jury verdict and for a new trial, arguing that the seating arrangement violated his right to a fair trial under both the federal and state Constitutions. The district court denied the motion, and Defendant appeals, arguing that by seating the victims, witnesses, and spectators in the same courtroom area as the jurors, the district court deprived him of a "fair trial by an impartial jury." However, as we explain, Defendant failed to preserve this issue during trial, and the district court did not err in the manner in which it seated the witnesses and jury.

{24}    "In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the [district] court of the nature of the claimed error and invokes an intelligent ruling thereon." *Montoya*, 2015-NMSC-010, ¶ 45

(internal quotation marks and citation omitted). A motion for a new trial is not sufficient to preserve an issue that was not otherwise raised during trial proceedings. *See State v. Pacheco*, 2007-NMSC-009, ¶¶ 7-8, 141 N.M. 340, 155 P.3d 745 (determining that because the defendant raised his claim of error for the first time in a motion for a new trial, and the defendant had the ability to object to the error throughout the trial, the claim was not properly preserved for appellate review).

{25}  Defendant failed to make a timely objection that would have given the district court the opportunity to correct any error. Defendant did not request the district court move the witnesses or spectators from the gallery during trial, nor did Defendant object to the courtroom setup before the trial began. Because Defendant only raised the issue in his post-trial motion, the issue is not preserved absent a showing of fundamental error. *See* Rule 12-321(B)(2) NMRA (providing an exception to the preservation rule for questions involving fundamental error).

{26}  The district court did not err in the manner in which it seated witnesses, spectators, and the jury. Defendant argues that seating witnesses, spectators, and jurors together caused jury intimidation and thus deprived Defendant of an impartial jury. "An impartial jury is one in which each and every juror is totally free from any impartiality whatsoever." *Fuson v. State*, 1987-NMSC-034, ¶ 5, 105 N.M. 632, 735 P.2d 1138 (internal quotation marks and citation omitted). The seating arrangement imposed by the district court simply required the witnesses, spectators, and jurors to

13

sit in the gallery to accommodate the requisite social distancing. *See* New Mexico Supreme Court Order No. 20-8500-025 at 12 (July 6, 2020), https://www.nmcourts.gov/wp-content/uploads/2020/12/Order-No_-20-8500-025-Order-Adopting-PHE-Protocols-for-Safe-and-Effective-Operation-of-NM-Courts-7-6-20-with-PHE-Protocols-Attached-1.pdf (requiring district courts to maintain "a minimum distance of six (6) feet in each direction between every individual participating in the trial proceedings"). Everyone was seated facing forward, socially distanced, wearing facemasks, which necessarily concealed any facial expressions. There is no evidence that any of the witnesses or spectators improperly communicated with the jurors. Nor did any juror express concern to the bailiff who was present with the jury during trial. Seating witnesses, spectators, and jurors together in the gallery to accommodate safe social distancing, without evidence of improper conduct, such as communication, interference, or intimidation is insufficient to establish that Defendant was deprived of an impartial jury. Accordingly, we conclude that the district court did not err in the manner in which it seated the witnesses and the jury.

**CONCLUSION**

{27} For the foregoing reasons, we affirm.

{28} **IT IS SO ORDERED.**

_____
**KRISTINA BOGARDUS, Judge**

14

**WE CONCUR:**

_____

**SHAMMARA H. HENDERSON, Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge, retired, sitting by designation**

15