This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38083**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**BENNIE TYRONE PINO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Charles D. Agoos, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}** This case is before us on remand from the New Mexico Supreme Court, following its decision in *State v. Taylor*, 2024-NMSC-011, 548 P.3d 82, with instructions to affirm the validity of the requisite mens rea as set forth in UJI 14-612 NMRA, and decide all other remaining issues on appeal. Defendant seeks reversal of his convictions for aggravated fleeing from a law enforcement officer, contrary to NMSA 1978, Section 30-22-1.1 (2003, amended 2022), and child abuse by endangerment, contrary to NMSA 1978, Section 30-6-1(D)(1) (2009). As to his aggravated fleeing conviction, Defendant

argues (1) the State presented insufficient evidence for the second and fourth elements of the crime; and (2) the district court erred by not instructing the jury on a lesser included offense. As to Defendant's child abuse conviction, he argues that he cannot lawfully be convicted of felony child abuse based on speeding alone. Defendant also argues that the district court's admission of law enforcement testimony deprived him of a fair trial, and that he was entitled to more presentence confinement credit than the district court awarded.[1] For the reasons articulated below, we affirm.

## BACKGROUND

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we set forth here only a brief overview of the facts of this case. We reserve discussion of additional facts as necessary for our analysis.

**{3}** While on patrol on U.S. Highway 70 in his marked police vehicle on the night of March 23, 2017, Deputy Garza observed Defendant's vehicle traveling in the opposite direction at a high speed. Using a radar gun, Deputy Garza determined that Defendant was driving 86 miles per hour in a posted 65 mile-per-hour zone. Deputy Garza activated his emergency lights and sirens, turned his vehicle around and attempted to initiate a traffic stop of Defendant's vehicle. Defendant did not stop. After approximately six minutes of pursuit, Deputy Garza terminated the pursuit. Shortly after Deputy Garza ended the pursuit, Defendant drove to the Mescalero police station, where Bureau of Indian Affairs (BIA) Officer Jackson encountered and arrested Defendant.

**{4}** During trial, over Defendant's objections, Officer Jackson testified, in relevant part, that (1) Defendant admitted to use of methamphetamine on the day of the incident; (2) based on his experience in law enforcement, Officer Jackson developed the ability to "tell 'methamphetamine' from 'scared,'" and could distinguish between someone who was scared from someone who was under the influence of methamphetamine; and (3) it was his opinion that Defendant was under the influence of methamphetamine that night.

**{5}** Following a jury trial, Defendant was convicted of both charges and this appeal follows.

## DISCUSSION

### I. Defendant's Conviction for Aggravated Fleeing

**{6}** Defendant argues that his conviction for aggravated fleeing should be reversed because (1) insufficient evidence supports the conviction; and (2) the denial of the jury

---

[1]We do not reach the merits of this argument because Defendant has served his term of incarceration, and, accordingly, the issue is now moot. *See State v. Nieto*, 2013-NMCA-065, ¶ 8, 303 P.3d 855 (concluding that NMSA 1978, Section 31-20-12 (1977) does not require presentence confinement credit to reduce sentences of probation as it would sentences of incarceration).

instruction on the lesser included offense of misdemeanor evading constitutes reversible error. We address each argument in turn.

## A.     Sufficient Evidence Supports the Conviction for Aggravated Fleeing

**{7}**     Defendant first contends that his conviction for aggravated fleeing should be overturned because the State provided insufficient evidence of actual endangerment, and, of Defendant's knowledge that a law enforcement officer had given him an audible or visual signal to stop.

**{8}**     "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration, internal quotation marks, and citation omitted). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted). Consequently, we consider the instruction given to the jury for the charge of aggravated fleeing.

**{9}**     To convict Defendant of aggravated fleeing, pursuant to Section 30-22-1.1(A)(2003),[2] the jury was instructed, pursuant to UJI 14-2217 NMRA, as follows:

> For you to find [D]efendant guilty of aggravated fleeing a law enforcement officer as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime[:]
>
> 1.     [D]efendant operated a motor vehicle;
>
> 2.     [D]efendant drove willfully and careless[ly] in a manner that endangered the life of another person;
>
> 3.     [D]efendant had been given a visual or audible signal to stop by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle;
>
> 4.     [D]efendant knew that a law enforcement officer had given him an audible or visual signal to stop;

---

2The incident giving rise to the charges in this case occurred prior to the 2022 amendment to Section 30-22-1.1. Consequently, unless otherwise noted, we refer herein to the 2003 version of Section 30-22-1.1.

> 5. This happened in New Mexico, on or about the 23rd day of March, 2017.

**{10}** In support of his argument that the State presented insufficient evidence of the second element, actual endangerment, Defendant relies primarily on *State v. Vest* (*Vest I*), 2018-NMCA-060, 428 P.3d 287, *rev'd*, *State v. Vest* (*Vest II*), 2021-NMSC-020, ¶ 12, 488 P.3d 626. Defendant's reliance on *Vest I* is misplaced. In *Vest II*, 2021-NMSC-020, ¶¶ 15, 19, our Supreme Court held that Section 30-221.1(A) "does not require that an identifiable person was actually endangered as a result of the defendant's flight from law enforcement." Rather,

> [w]hen reviewing sufficiency of the evidence in an aggravating fleeing case, what is significant is not whether there was at least one person in the vicinity of the police chase. Rather, the focus is on whether a defendant drove so dangerously that he could have hurt someone who could have been in the vicinity of the pursuit. The question is whether he put the community at risk of harm when he fled the police. The act of driving in a dangerous manner while fleeing police is enough to convict a defendant of aggravated fleeing.

*Vest II*, 2021-NMSC-020, ¶ 39.

**{11}** Here, Deputy Garza testified that (1) he observed Defendant's car travelling at high speed; (2) radar established that Defendant was initially travelling approximately 86 miles per hour in a 65 mile–per-hour zone; (3) after Deputy Garza activated his emergency lights, Defendant accelerated to at least 101 miles per hour; (4) in his attempt to catch up to Defendant's vehicle, Deputy Garza reached speeds of 120 miles per hour; (5) the area through which Defendant was driving is a known elk-crossing area; (6) a large number of motor vehicles accidents occur in that area due to the elk crossing; and (7) Deputy Garza ultimately ended the pursuit in the interest of public safety. As well, dash camera footage established that Defendant passed four vehicles on the highway during the pursuit. This evidence was sufficient for a reasonable juror to conclude Defendant drove willfully and carelessly in a manner that endangered the life of another person.

**{12}** Second, Defendant argues that the State presented insufficient evidence of the fourth element, Defendant's knowledge that a law enforcement officer was attempting to stop him. As to this element, Deputy Garza testified that during the pursuit, he activated different pitched sirens in an attempt to gain Defendant's attention. He testified that during the pursuit, he was as close as ten yards away from the Defendant's vehicle. Dash-camera footage shows that Deputy Garza's emergency lights and sirens remained activated through the entire pursuit, and Deputy Garza also utilized his public address system to instruct Defendant to pull over. However, most revealing is Defendant's testimony that he knew a vehicle was behind him, and conceded that the lights were visible. Here, too, evidence was sufficient for a reasonable juror to conclude

Defendant knew a law enforcement officer had given him an audible or visual signal to stop.

**{13}** Thus, viewing the evidence in favor of the guilty verdict, a rational juror "could have found the essential elements of [aggravated fleeing] beyond a reasonable doubt." *Cunningham*, 2000-NMSC-009, ¶ 26.

**B.     Defendant Was Not Entitled to an Instruction on the Lesser Included Offense of Evading**

**{14}** Next, Defendant contends the district court's denial of jury instructions on the lesser included offense of misdemeanor evading in violation of NMSA 1978, Section 30-22-1(C) (1981) constitutes reversible error. We review the district court's rejection of proposed jury instructions de novo, "because the rejection is closer to a determination of law than a determination of fact." *See State v. Percival*, 2017-NMCA-042, ¶ 8, 394 P.3d 979 (alteration, internal quotation marks, and citation omitted). In this instance, because Defendant preserved this issue, we review for reversible error. *See id.*

**{15}** A district court should grant a request for a lesser included offense instruction if "(1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser." *State v. Notah*, 2022-NMCA-005, ¶ 15, 503 P.3d 418 (internal quotation marks and citation omitted). In this appeal, we need only analyze the third part of the test to conclude that Defendant was not entitled to a lesser included offense instruction.

**{16}** While the misdemeanor offense of evading requires proof that a defendant willfully refused to bring a vehicle to a stop after being given a visual or audible signal to stop, aggravated fleeing requires proof that a defendant drove willfully and carelessly in a manner that endangered the life of another person. *Compare* § 30-22-1(C), *with* § 30-22-1.1(A). *See Vest II*, 2021-NMSC-020, ¶ 24 (explaining that in addition to the acts required to commit the misdemeanor offense of evading, the felony offense of aggravated fleeing "adds the requirement of willfully and carelessly driving a vehicle in a manner that endangers the life of another person." (alteration, internal quotation marks, and citation omitted)). In other words, the distinction turns on whether a defendant's conduct while driving puts others at risk of harm by driving in a dangerous manner while they are attempting to escape a law enforcement officer. *See id.* ¶ 29. Thus, for Defendant to be entitled to a lesser included instruction, the element of whether Defendant put others at risk of harm by driving in a dangerous manner must be sufficiently in dispute for a rational juror to acquit Defendant of the greater offense and convict him of the lesser offense. In determining whether the element was sufficiently in dispute, we view the evidence "in the light most favorable to the giving of the requested

instruction." *See Notah*, 2022-NMCA-005, ¶ 13 (internal quotation marks and citation omitted).

**{17}** Defendant argues that, since the State did not introduce evidence that he violated any traffic laws other than speeding, the jury could have reasonably concluded that he did not drive willfully and carelessly in a manner that endangered the life of another person. But, driving in a dangerous manner creates a higher risk of accident to everyone, because a defendant who is speeding has no way of knowing what events may transpire. *See Vest II*, 2021-NMSC-020, ¶ 30 ("A defendant driving recklessly by ignoring traffic signals or speeding has no way to know who may be standing on the next sidewalk or when another car may appear."). While the jury was presented with different explanations for Defendant's conduct, there is no dispute that Defendant admitted that he knew he was driving dangerously, and that he passed four vehicles while driving at a high rate of speed on a highway with limited visibility, in an area that is known for frequent elk crossing.

**{18}** Accordingly, we see no reasonable view of the evidence that would support a jury finding that Defendant did not drive willfully and carelessly in a manner that endangered the life of another person, and thus the evidence does not establish that "a jury rationally could acquit on the greater offense and convict on the lesser." *See Notah*, 2022-NMCA-005, ¶ 15 (internal quotation marks and citation omitted). Defendant was therefore not entitled to the instruction on the lesser included offense.

## II.      Defendant's Conviction for Child Abuse by Endangerment

**{19}** Defendant challenges his conviction for child abuse by arguing that sufficient evidence cannot support his conviction because speeding was the only conduct described in the jury instruction, and speeding alone cannot form the basis of a conviction for child abuse by endangerment.[3] We do not agree and explain.

**{20}** Because we have set forth the standard of review for a challenge to the sufficiency of evidence above in our discussion of Defendant's challenge to the sufficiency of the evidence as to the charge of aggravated fleeing, we will not restate it here. We turn then to consider the merits of Defendant's sufficiency of evidence challenge.

**{21}** To convict Defendant of child abuse by endangerment, the jury was instructed that it must find the following elements beyond a reasonable doubt:

---

[3]Defendant also argues that the jury instruction was erroneous because it defined recklessness under an objective standard rather than a subjective standard. Because our Supreme Court rejected that argument in *Taylor*, 2024-NMSC-011, ¶ 24, and remanded with instructions to affirm the validity of the requisite mens rea as set forth in UJI 14-612, we do not address this argument further. *See Taylor*,2024-NMSC-011, ¶ 24 (stating that "the reckless element of child abuse in New Mexico is properly evaluated under an objective test."); *see also id.* ¶¶ 25-26 (declaring that subjective knowledge of risk of harm is not required under *State v. Consaul*, 2014-NMSC-030, 332 P.3d 850, or the Uniform Jury Instructions).

1. [Defendant] drove a motor vehicle at speeds in excess of 100 miles per hour;

2. By engaging in the conduct described in Paragraph 1, [Defendant] caused [Minor 1], [Minor 2], and [Minor 3] to be placed in a situation that endangered the life or health of [Minor 1], [Minor 2] and [Minor 3];

3. [Defendant] showed a reckless disregard for the safety or health of [Minor 1], [Minor 2], and [Minor 3]. To find that [Defendant] showed a reckless disregard, you mu[st] find that [Defendant]'s conduct was more than merely negligent or careless. Rather, you mu[st] find that [Defendant] caused a substantial and unjustifiable risk of serious harm to the safety or health of [Minor 1], [Minor 2], and [Minor 3]. A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than Defendant out of concern for the safety or health of [Minor 1], [Minor 2], and [Minor 3];

4. [Minor 1], [Minor 2] and [Minor 3] were under the age of eighteen; [and]

5. This happened in New Mexico on or about the 23rd day of March, 2017.

**{22}** As we understand Defendant's argument, because speeding was the only conduct described in Paragraph 1 of the instruction, the jury was limited to considering only Defendant's speed when deliberating whether he was guilty of child abuse by endangerment. As a result, Defendant argues, he was erroneously convicted based on speeding alone.

**{23}** Defendant's characterization of the instruction is not reasonable, however, because it suggests that the first element conflated the conduct at issue with the mental state, and that this somehow obviated the third element. The instruction made clear to the jury that something other than speeding was required to convict Defendant; it also had to find that he showed a reckless disregard for the safety or health of the three children in the vehicle. *Cf. State v. Simpson*, 1993-NMSC-073, ¶ 21, 116 N.M. 768, 867 P.3d 1150 (holding that the jury was properly instructed that speeding alone was not a per se basis for conviction of reckless driving because the jury had to find, in addition to speeding, that the defendant "drove with willful disregard of the rights or safety of others" (internal quotation marks and citation omitted)).

**{24}** Further, although speeding alone is insufficient to constitute recklessness, it is one of the factors for a jury to consider when determining whether a defendant acted recklessly. *See State v. Doyal*, 2023-NMCA-015, ¶ 17, 525 P.3d 412; *see also State v.*

*Munoz*, 2014-NMCA-101, ¶ 10, 336 P.3d 424 ("[S]peeding can constitute recklessness if the speeding created a danger for others and additional conduct establishes that a driver willfully disregarded the safety of others"). *Doyal* clarifies that a jury can use the totality of the circumstances, including additional conduct beyond speeding, to determine that a defendant drove in a reckless manner. *See State v. Kevin E.-O.*, ___-NMCA- ___, ¶ 11, ___ P.3d ___ (A-1-CA-42084, December 17, 2024), *cert. denied* (S-1-SC-40748, Feb. 6, 2025). Thus, even if the overarching conduct that caused the child abuse by endangerment was speeding, "a jury considers all contributing factors to determine whether a defendant acted recklessly." *Doyal*, 2023-NMCA-015, ¶ 18.

**{25}** Here, sufficient evidence exists for a rational jury to find that, by driving over 100 miles per hour under the circumstances, Defendant showed a reckless disregard for the safety or health of the children in the vehicle, as required by the third element of the offense. In addition to Defendant's speeding, the jury heard evidence that (1) Defendant was fleeing from a police officer, *see, e.g.*, *State v. Ramirez*, 2016-NMCA-072, ¶ 25, 387 P.3d 266 (stating "children are often placed in danger by conduct that also happens to violate a separate criminal statute"); *State v. Chavez*, 2009-NMSC-035, ¶ 25, 146 N.M. 434, 211 P.3d 891 (explaining that "[w]here a defendant's underlying conduct violates a separate criminal statute, such legislative declaration of harm may be useful, though not dispositive, to an endangerment analysis when the Legislature has defined the act as a threat to public health, safety, and welfare"); (2) dash-camera footage showed Defendant was driving on a dark, curving highway with no roadway lighting; (3) Defendant knew he was driving at least 100 miles per hour; (4) Defendant passed at least four vehicles while driving; and (5) Defendant knew that driving over 100 miles per hour created a risk of danger to the children in the vehicle.

**{26}** Viewing this evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict, we conclude that there was sufficient evidence for a rational juror to find the essential elements of child abuse beyond a reasonable doubt.

### III. Admission of Officer Jackson's Testimony

**{27}** Defendant argues that the district court's admission of Officer Jackson's testimony deprived him of a fair trial. We disagree and explain.

### A. Officer Jackson's Testimony That Defendant Used Methamphetamine

**{28}** During a pretrial conference, Defendant argued that the district court should prohibit Officer Jackson from testifying about Defendant's alleged admission to methamphetamine use because the testimony would be more prejudicial than probative. After hearing the State's response, the district court ruled that it would allow Officer Jackson to testify that Defendant admitted to use of methamphetamine. Defendant then asserted that it was unclear from Officer Jackson's police report whether Defendant's admission was the result of a custodial interrogation and that it was unclear whether *Miranda* rights were administered. The district court declined to change its ruling, noting

that Defendant had not filed a motion to suppress. On appeal, Defendant continues to assert that this testimony by Officer Jackson should have been suppressed by the district court.

**{29}** Rule 5-212(C) NMRA provides that "[a] motion to suppress shall be filed no less than sixty (60) days prior to trial, unless, upon good cause shown, the trial court waives the time requirement." *See also City of Santa Fe v. Marquez*, 2012-NMSC-031, ¶¶ 25, 28, 285 P.3d 637 (holding that "Rule 5-212(C) requires that motions to suppress be filed before trial and that the district courts must adjudicate suppression issues before trial, absent good cause"). "Examples of good cause may include, but are not limited to, failure of the prosecution to disclose evidence relevant to the motion to suppress to the defense prior to trial, failure of either party to provide discovery, or the discovery of allegedly suppressible evidence during the course of the trial." Rule 5-212 comm. cmt. Further, "there is a presumption of correctness in the district court's rulings. Accordingly, it is [the d]efendant's burden on appeal to demonstrate any claimed error below." *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (alterations, internal quotation marks, and citation omitted).

**{30}** Defendant does not dispute that the purported motion to suppress was untimely. Instead, Defendant faults the district court for denying the motion without consideration of its merits and without inquiring as to the existence of good cause for the untimeliness of the motion. Defendant's argument asks us to shift the burdens of Rule 5-212 by placing a burden on the trial court to assess whether good cause exists for waiving the time requirement. However, Defendant misapprehends Rule 5-212. The plain language of the rule makes clear that it is the moving party's burden to show good cause for an untimely motion. In this instance, Defendant did not argue that good cause existed for his untimely oral motion. Nor has Defendant argued good cause for the untimely motion on appeal. Without a record establishing good cause, we cannot conclude that the trial court erred by not entertaining Defendant's untimely motion to suppress. Consequently, Defendant has failed to establish that the district court committed error by refusing to suppress Officer Jackson's testimony that Defendant admitted use of methamphetamine on the day of the incident.

## B.     Officer Jackson's Opinion Testimony

**{31}** Finally, Defendant argues that the district court erred by allowing Officer Jackson to testify that, in his opinion, Defendant was under the influence of methamphetamine on the day of the incident. Specifically, Defendant contends that Officer Jackson was never qualified as an expert witness pursuant to Rule 11-701 NMRA, and, as a result, Officer Jackson improperly opined Defendant was under the influence of methamphetamine. We do not consider this argument further because even were we to assume without deciding that Officer Jackson's testimony was erroneously admitted, we conclude that such admission constituted harmless error. We explain.

**{32}** Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful. *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. ("[A]

non[]constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." *Id.* ¶ 36 (internal quotation marks and citation omitted)). When determining whether the error affected the verdict, we "examine the importance of the erroneously admitted evidence in the prosecution's case, as well as whether the error was cumulative or instead introduced new facts." *Id.* ¶ 43 (alterations, internal quotation marks, and citation omitted).

**{33}** Here, Defendant asserts that he was prejudiced by Officer Jackson's testimony because it improperly suggested that Defendant was a drug abuser who may have been high during the incident. Defendant contends that, absent Officer Jackson's testimony concerning the alleged methamphetamine use, the jury was likely to have acquitted Defendant on one or both charges. We are not persuaded.

**{34}** We do not overlook the fact that the State spent a significant amount of time developing Officer Jackson's testimony regarding Defendant's alleged methamphetamine use and emphasizing that testimony during opening and closing arguments. Nor do we disagree that the jury could have relied on Officer Jackson's testimony to find that Defendant was under the influence of methamphetamine during the incident, which supported an inference that he endangered the three children in the vehicle with him. Nevertheless, we hold that admission of Officer Jackson's testimony was harmless because there is no reasonable probability that the jury—having heard from Defendant himself that he knew that his conduct created a risk of harm to the children and Officer Jackson's unchallenged testimony that Defendant admitted to having used methamphetamine on the day of the incident—was swayed to return a guilty verdict based on Officer Jackson's opinion that Defendant was under the influence of methamphetamine the day of the incident.

## CONCLUSION

**{35}** For the foregoing reasons, we affirm Defendant's convictions.

**{36}** **IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**ZACHARY A. IVES, Judge**